

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-12-2009

# Chen v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3022

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Chen v. Atty Gen USA" (2009). *2009 Decisions.* Paper 2059.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/2059

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

IMG-002                                          **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-3022
_____

XUE MEI CHEN

                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A97-331-546)
Immigration Judge: Honorable Alberto Riefkohl
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
DECEMBER 1, 2008

Before:   MCKEE, NYGAARD, AND ROTH, <u>Circuit</u> <u>Judges</u>

(Opinion Filed: January 12, 2009)
_____

OPINION
_____

PER CURIAM

        Xue Mei Chen petitions for review of the Board of Immigration Appeals' ("BIA")

final order of removal.  For the following reasons, we will grant her petition.

I.

Chen, a native and citizen of China, arrived in this country without valid documents in September 2004. She claimed during airport and credible fear interviews and in an asylum application that she fled China because a local official's son raped and impregnated her and she was forced to have an abortion. After retaining new counsel, however, she claimed in an amended application that she fled China because she feared persecution for her practice of Falun Gong. She concedes removability, but seeks asylum, withholding of removal and relief under the Convention Against Torture on that basis.

Before the Immigration Judge ("IJ"), Chen disavowed her initial claim and testified that she had made it on the advice of the "snakehead" who smuggled her out of China and told her that she would be sent back if she disclosed her practice of Falun Gong. She also testified about her experience with Falun Gong and Chinese authorities. According to Chen, she and her younger brother started to practice Falun Gong in 1998. In 1999, after Falun Gong was outlawed, Chinese authorities arrested them, detained them for eight or nine hours, kicked her in the legs and forced them to sign a statement disavowing Falun Gong and promising not to practice it. She stopped practicing but, several years later, a friend convinced her to hand out Falun Gong pamphlets. Someone told the authorities, who came to her house, searched her room and discovered the Falun Gong pamphlets. They arrested her and again detained her for eight or nine hours, slapping her five or six times and hitting her "around the hip area," finally letting her go

2

after she promised to tell them who had given her the pamphlets. Instead of going home, she went to stay with an aunt. Authorities started "harassing" her parents after they found out that she had "escaped," so her aunt arranged for her passage to the United States. In addition to this testimony, Chen submitted an affidavit from her mother and the 2004 country report detailing the persecution of Falun Gong practitioners in China.

The IJ, without making a credibility determination, denied relief after concluding that Chen had failed to prove that she actually practiced Falun Gong in China.[1] The BIA affirmed without opinion.[2]

## II.

Aliens are eligible for asylum if they show a well-founded fear of persecution, see Chukwu, 484 F.3d at 188, and are entitled to withholding of removal or relief under CAT if they show that persecution or torture is more likely than not, see Jarbough v. Att'y

---

[1] The IJ initially noted that "[Chen's] case is obviously effected [sic] by the prior statements and suffers from a basic lack of credibility as to the Court can accept the excuse for the first false statements in consideration for the basis for relief." (IJ Decision at 9, A.45.) Whatever that statement might mean, the IJ ultimately concluded that he "tend[ed] to believe" Chen's explanation, (id. at 10, A.46), and, as the Government concedes, never made an adverse credibility determination.

[2] We have jurisdiction to review the BIA's final order of removal under 8 U.S.C. § 1252(a)(1). Because the BIA affirmed the IJ's order without opinion, we review the decision of the IJ. See Toure v. Att'y Gen., 443 F.3d 310, 316 (3d Cir. 2006). We review the IJ's factual finding for substantial evidence and must uphold them '"unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Chukwu v. Att'y Gen., 484 F.3d 185, 189 (3d Cir. 2007) (quoting 8 U.S.C. § 1252(b)(4)(B)). Nevertheless, The IJ's conclusions "must be based on the record, not on conjecture or unsupported suppositions about conditions in the applicant's country." Id.

3

Gen., 483 F.3d 184, 190-91 (3d Cir. 2007).  A showing of past persecution gives the alien a rebuttable presumption of future persecution.  See id.  Although the IJ did not discuss Chen's claims precisely in these terms, we construe his decision as concluding that Chen had failed to show either past persecution or a well-founded fear or likelihood of future persecution.  We agree with the first conclusion.[3]  The second, however, is not supported by substantial evidence.

The IJ properly acknowledged that the practice of Falun Gong can provide a basis for immigration relief.  He also did not make an adverse credibility finding, so "we will proceed as if the applicant's testimony were credible."  Toure, 443 F.3d at 326.[4]  We also note that credible testimony alone may be sufficient to carry an applicant's burden of proof.  See Jishiashvili v. Att'y Gen., 402 F.3d 386, 392 (3d Cir. 2005).  The IJ nevertheless denied relief on the sole basis that that Chen had not proven that she practiced Falun Gong in China.  The IJ based that ruling on three primary conclusions, each of which is problematic.

First, the IJ stated that Chen "has not provided the Court with any type of corroborating information" regarding her practice of Falun Gong or mistreatment by

---

[3]The IJ concluded that "nothing major was done" to Chen.  (IJ Decision at 9, A.45.) We agree, as the Government argues, that Chen's mistreatment did not rise to the level of persecution.  See, e.g., Jarbough, 483 F.3d at 191.

[4]The REAL ID Act of 2005 codified this principle at 8 U.S.C. § 1158(b)(1)(B)(iii), but Chen filed her asylum application before May 11, 2005, so the statutory provision does not apply to her.  See Toure, 443 F.3d at 326 n.9.

4

authorities (IJ Decision at 9, A.45), and later referred again to "the lack of any kind of corroboration," (id. at 11, A.47).  As Chen argues, however, she provided a corroborating affidavit from her mother, which the IJ did not discuss.  (A.248-249.)[5]  See Toure, 443 F.3d at 323 (noting that the BIA recognizes "letters from family members" as forms of corroboration).  Moreover, as Chen also argues, the IJ did not follow the three-step procedure required before denying a claim for lack of corroboration.  See Chukwu, 484 F.3d at 191-92 ("[T]he failure to produce corroborating information may undermine an applicant's case where (1) the IJ identifies facts for which it is reasonable to expect corroboration, (2) the applicant fails to corroborate, and (3) the applicant fails to adequately explain that failure.").  In particular, although the IJ mentioned that "[t]here's no record of any of the actions taken against her," he did not explain what he expected Chen to produce or why it was reasonable to expect her to produce it, and did not decide whether corroborating evidence was or was not available.[6]

Second, the IJ found it "strange" that Chen's parents suffered no direct consequences as a result of her practice of Falun Gong.  (IJ Decision at 9-10, A.45-46.)  Both Chen's testimony and her mother's affidavit, however, make it clear that her parents

---

[5]The Government argues that this affidavit conflicts with Chen's testimony in several respects, but the IJ did not base his ruling on those alleged conflicts or otherwise evaluate the affidavit.  We may not do so in the first instance.  See Chukwu, 484 F.3d at 189.

[6]For this reason, the relevant inquiry is not, as the Government insists, whether a reasonable trier of fact would be compelled to conclude that corroborating evidence is unavailable.  See 8 U.S.C. § 1252(b)(4).  See also Toure, 443 F.3d at 325 (noting that the REAL ID Act does not alter IJs obligation to apply the three-part framework).

themselves never practiced Falun Gong. The IJ's apparent assumption that the Chinese government generally punishes parents for the crimes of their children does not have record support.[7]

Finally, the IJ noted that Chen had not made any connections with Falun Gong practitioners in New York City, from which he concluded that she is not practicing Falun Gong "freely" in the United States. (IJ Decision at 11, A.47.) He further believed that this conclusion bolstered his conclusion that Chen had not actually practiced Falun Gong in China. (Id.) Chen, however, testified that she practices Falun Gong several times a week, both inside and outside her home. Once again, there is no record support for the IJ's assumption that this manner of private practice somehow is inconsistent with Chen

---

[7]The IJ based this conclusion on his personal experience in "[h]aving dealt with the Chinese government now, for almost a period of 30 years[.]" (IJ Decision at 10, A.46.) The Government argues that such experience is a sufficient basis for this conclusion and cites a concurring opinion for the proposition that "[w]here the IJ relies on his or her expert knowledge of general country conditions to draw inferences of plausibility, it may be that these inferences are worthy of deference." Jishiashvili, 402 F.3d at 398 (Aldisert, J., concurring). Judge Aldisert, however, made that statement merely by way of noting that there "may be" exceptions to the general principle that reviewing courts are as competent as IJs to assess plausibility. Id. His opinion certainly does not stand for the proposition that an IJ's conclusions need not be based on the record, which the majority in Jishiashvili squarely reaffirmed they must. See id. at 393. See also Toure, 443 F.3d at 316 ("deference is expressly conditioned on support in the record"). The Government also argues that this conclusion is supported by record evidence of "oppressive conduct" by the Chinese government in general. The IJ himself, however, did not base his conclusion on that evidence. Even if he had, general oppressiveness hardly supports the specific assumption that the Chinese government punishes the non-practicing parents of Falun Gong practitioners.

having practiced Falun Gong in China.[8]

Accordingly, we will grant the petition for review, vacate the BIA's order of removal, and remand for further proceedings. On remand, the BIA is directed to reevaluate Chen's claims in light of this opinion.

---

[8]The Government argues that Chen's failure to corroborate her practice of Falun Gong in the United States was part of the basis of the IJ's decision and cites testimony that it claims made it reasonable for the IJ to expect such corroboration. The IJ, however, did not fault Chen for failing to corroborate her practice of Falun Gong in the United States or rely on any of the testimony that the Government cites. Instead, he concluded that Chen's manner of practice in the United States – i.e., privately, and without making contact with other Falun Gong practitioners – is inconsistent with her having practiced in China. As explained above, that conclusion lacks record support.